Mikki Cantley, as personal representative of Harlon Godfrey, deceased, filed a wrongful death action against several tobacco-related defendants, alleging that those defendants had caused Godfrey's death; Godfrey had been a smoker.[1] The trial judge, based on federal preemption grounds, entered a summary judgment for the defendant Lorillard Tobacco Company ("Lorillard") and entered a partial summary judgment for the defendant R.J. Reynolds Tobacco Company ("R.J. Reynolds"). After the summary judgments were made final pursuant to Rule 54(b), Ala.R.Civ.P., the plaintiff appealed. All parties to this appeal agree that it raises only one issue: Whether the Public Health Cigarette Smoking Act of 1969 ("the labeling act of *Page 1059 
1969"), which amended the Federal Cigarette Labeling and Advertising Act of 1965, preempts the plaintiff's wrongful death cause of action.[2]
As a teenager, Harlon Godfrey began smoking two packs of cigarettes a day; he continued to do so until shortly before he died. The plaintiff alleged that Godfrey smoked only "Winston" cigarettes, manufactured by the defendant R.J. Reynolds, until he was in his middle 40's, and then changed to the "Kent Light" brand of cigarettes, a product of the defendant Lorillard. Sometime in the late 1980s, Godfrey was diagnosed with cancer of the hypopharynx and larynx. Chemotherapy and attempts at surgically eradicating the cancer failed. Godfrey died from cancer-related causes on April 3, 1991, at the age of 61.
Cantley filed this wrongful death action on April 2, 1993. Cantley originally pleaded three causes of action — fraudulent suppression; liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") for failure to warn of an unreasonable hazard; and liability under the AEMLD for design defect.[3] After raising federal preemption as a defense in their answers, R.J. Reynolds and Lorillard later filed separate summary judgment motions based solely upon federal preemption grounds, relying upon 15 U.S.C. § 1334(b) and Cipollone v.Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608,120 L.Ed.2d 407 (1992). Cantley voluntarily dismissed her failure-to-warn claim, conceding that that claim was clearly preempted underCipollone. Following a hearing, the trial judge entered a summary judgment for Lorillard as to both of the remaining claims. The trial judge then entered a summary judgment for R.J. Reynolds as to those two remaining claims, to the extent that the plaintiff seeks redress for alleged tortious conduct occurring on or after July 1, 1969, the effective date of the labeling act of 1969.[4] The plaintiff appealed.
The second paragraph of Article VI of the United States Constitution sets out what is known as the Supremacy Clause:
 "This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding."
The United States Supreme Court has repeatedly held that "[i]t is basic to this constitutional command that all conflicting state [laws] be without effect." Maryland v. Louisiana,451 U.S. 725, 746, 101 S.Ct. 2114, 2128-29, 68 L.Ed.2d 576 (1981) (citing M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 427,4 L.Ed. 579 (1819)). Therefore, when federal and state laws conflict, the federal law triumphs and preempts the conflicting state law.
Not only are conflicting state statutes and regulations preempted, but state common law rules are also preempted to the extent that they conflict with federal law. In San DiegoBuilding Trades Council v. Garmon, 359 U.S. 236, 247,79 S.Ct. 773, 780-81, 3 L.Ed.2d 775 (1959), the United States Supreme Court held:
 "The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling *Page 1060 
policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme."
This principle was reaffirmed by the United States Supreme Court's opinion in Cipollone.[5]
In support of their summary judgments, R.J. Reynolds and Lorillard argue that the preemption provision found in the labeling act of 1969, codified at 15 U.S.C. § 1334(b), preempts Cantley's claims. That subsection states:
 "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act."
15 U.S.C. § 1334(b). Because preemption is a matter of federal law, we must look to federal authority, especially United States Supreme Court authority, for guidance in interpreting and applying the § 1334(b) preemption provision.
In Cipollone, the United States Supreme Court sought to interpret § 1334(b), as well as to determine the extent to which the labeling act of 1969 preempts state law, including state common law causes of action. Our task of determining whether one or both of Cantley's claims are preempted by the federal labeling act is made more difficult by the fact that that portion of Justice Stevens's Cipollone opinion that states which common law causes of action are federally preempted, was joined by only three other Justices. But when the plurality portion of the Cipollone opinion is considered in conjunction with the other two opinions concurring in part and dissenting in part, a clear rule of law emerges.
In Cipollone, only Justice Scalia and Justice Thomas took the position that all common law causes of action against cigarette makers for smoking-related injuries and deaths are preempted by the labeling act of 1969. The other seven Justices agreed that at least some state law causes of actions against cigarette makers have not been preempted by Congressional action.[6]
Furthermore, Justice Stevens, joined by six other Justices in the first portion of his opinion, stated:
 "When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority,' Malone v. White Motor Corp., 435 U.S., [497] at 505, [98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978)] . . . 'there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation. California Federal Savings Loan Assn. v. Guerra, 479 U.S. 272, 282 [107 S.Ct. 683, 690, 93 L.Ed.2d 613] (1987) (opinion of Marshall, J.)."
505 U.S. at 517, 112 S.Ct. at 2618. Cipollone, therefore, clearly establishes two principles: first, that this Court need consider only whether § 1334(b) expressly preempts a complainant's claims, and second, that § 1334(b) does not preempt every conceivable *Page 1061 
common law claim seeking redress for smoking-related injuries and deaths.
Justice Stevens, writing for himself, Chief Justice Rehnquist, Justice White, and Justice O'Connor, formulated the following test to determine whether a common law cause of action against a cigarette maker is preempted by § 1334(b):
 "whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion. . . .' "
Cipollone, 505 U.S. at 524, 112 S.Ct. at 2621. After considering the several Cipollone opinions as a whole, we, like the majority of other courts that have attempted to apply theCipollone holding,[7] feel compelled to apply the test and reasoning enunciated by Justice Stevens in the plurality portion of his opinion. Justice Stevens's pragmatic middle-of-the-road approach in grappling with the very difficult issue of federal preemption of common law causes of action seems in this Court's opinion to comport with the plain meaning of § 1334(b).[8]
Applying Justice Stevens's reasoning first to the question whether Cantley's fraudulent suppression claim is preempted by federal law, we must conclude that it clearly is. Because § 1334(b) "pre-empts . . . the imposition of state-law obligations 'with respect to the advertising or promotion' of cigarettes[,]" claims that a cigarette maker concealed material facts are preempted insofar as those claims rely on a state law duty to disclose such facts through advertising or promotion methods. Cipollone, 505 U.S. at 528, 112 S.Ct. at 2623-24. A fraudulent suppression claim against a cigarette maker seeking relief based on smoking-related illness or death can avoid federal preemption only if the claim is based "on a state law duty to disclose [the allegedly concealed material] facts through channels of communication other than advertising or promotion." Id.
Cantley's fraudulent suppression claim merely alleged generally that the defendants had failed to inform Godfrey of the risks of smoking. Because manufacturers in the position of the defendants R.J. Reynolds and Lorillard can ordinarily communicate directly with consumers like Godfrey only through "advertising or promotion" channels of communication, we must conclude that Cantley's fraudulent suppression claims, as pleaded, are inevitably based upon a "state law duty to disclose . . . facts through . . . advertising or promotion" channels of communication and, therefore, that they preempted.Id. The trial judge properly entered summary judgments against Cantley's fraudulent suppression claims.
The nature of the legal duty upon which Cantley's design-defect claim is predicated is much different, though. A design-defect claim is premised upon a common law duty, imposed upon manufacturers and distributors, not to distribute improperly designed or ill-conceived products[9] and is not *Page 1062 
premised upon any duty to communicate information to the buying public. Although the United States Supreme Court inCipollone did not have before it the issue whether design-defect claims are federally preempted, Justice Stevens made it clear that design-defect claims would not be preempted under the rule he enunciated in Cipollone:
 "That the pre-emptive scope of § 5(b) cannot be limited to positive enactments does not mean that that section pre-empts all common law claims. For example, as respondents concede, § 5(b) does not generally pre-empt 'state-law obligations to avoid marketing cigarettes with manufacturing defects or to use a demonstrably safer alternative design for cigarettes.' "
Cipollone, 505 U.S. at 523, 112 S.Ct. at 2621 (emphasis added).[10]
Because Cantley's AEMLD design-defect claims are not predicated upon a common law duty with respect to the method or manner in which cigarette manufacturers advertise or promote their products, we must conclude that those claims are not preempted by federal law. Cipollone, 505 U.S. at 524,112 S.Ct. at 2621-22. The summary judgments for R.J. Reynolds and Lorillard are reversed insofar as they relate to Cantley's AEMLD design-defect claims, and this case is remanded for further proceedings consistent with the principles set out herein.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and SHORES, INGRAM, and BUTTS, JJ., concur.
[1] The trial judge had previously entered a summary judgment for the defendant Retha Greathouse, the owner of one of the stores where the plaintiff alleged Godfrey had bought cigarettes. Cantley did not appeal from the summary judgment for Greathouse.
[2] This opinion deals with a subject of great current interest, both in fact (see, e.g., Jonathan Franzen, "Sifting the Ashes,"The New Yorker, pp. 40-46 (May 13, 1996)), and in fiction (see, e.g., John Grisham, The Runaway Jury (Doubleday, June 1996)).
[3] Although Cantley asserts in her brief that her complaint also contained a fourth cause of action, fraudulent misrepresentation, we find no allegations in her complaint to support such a claim.
[4] The United States Supreme Court, in Cipollone v. LiggettGroup, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407
(1992), held that the preemption provisions contained in the "1965 [Labeling] Act only pre-empted state and federal rulemaking bodies from mandating particular cautionary statements and did not pre-empt state-law damages actions." Id.
at 519-20, 112 S.Ct. at 2618-19.
Because Godfrey did not begin smoking Lorillard's cigarettes until after the effective date of the Labeling Act of 1969, the plaintiff acknowledges that her claims against Lorillard can survive only to the extent that they are not preempted by the 1969 act.
[5] Although the portion of the Cipollone opinion written by Justice Stevens, which holds that certain common law causes of action are preempted by the labeling act of 1969, was joined by only three other Justices, a total of six Justices agreed that state common law causes of action could be, and sometimes are, subject to federal preemption. The members of the four-Justice plurality (Justice Stevens, joined by Chief Justice Rehnquist, Justice White, and Justice O'Connor) and the two other Justices who concurred in part and dissented in part (Justice Scalia, joined by Justice Thomas) merely disagreed as to whether the labeling act preempted all state common law causes of action seeking relief against cigarette manufacturers for smoking-related illnesses and deaths, as Justice Scalia argued, or just certain causes of action, as Justice Stevens asserted.
[6] In fact Justice Blackmun, joined by Justice Kennedy and Justice Souter, argued in his opinion concurring in part and dissenting in part that no state common law causes of action are preempted by § 1334(b), because "neither [labeling act] provides the kind of unambiguous evidence of congressional intent necessary to displace state common-law damages claims."Cipollone v. Liggett Group, Inc., 505 U.S. 504, 531,112 S.Ct. 2608, 2625, 120 L.Ed.2d 407 (1992).
[7] See, e.g., Grinnell v. American Tobacco Co., 883 S.W.2d 791
(Tex.App. 1994).
 The Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) (7 U.S.C. § 136-136y) contains preemption language similar to the language found in the labeling act of 1969. Courts faced with the problem of interpreting and applying the preemption language found in FIFRA have, therefore, looked to Cipollone for guidance in determining which causes of actions against chemical companies are preempted and which are not. The vast majority of courts that have considered the issue post-Cipollone have held that FIFRA does not preempt design defect claims. See, e.g., Eide v. E.I. Du Pont De Nemours Co., 542 N.W.2d 769 (S.D. 1996); ISK Biotech Corp. v. Douberly, 640 So.2d 85 (Fla.Dist.Ct.App. 1994), rev. denied, 651 So.2d 1194 (Fla. 1995); Jenkins v. Amchem Products, Inc., 256 Kan. 602, 886 P.2d 869 (1994), cert. denied, ___ U.S. ___, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); and Warner v. American Fluoride Corp., 204 A.D.2d 1, 616 N.Y.S.2d 534 (1994).
[8] Justice Stevens's test focuses sharply on whether the duty imposed on a cigarette maker by a common law rule imposes an additional "requirement" or constitutes an additional "prohibition" as to how cigarette makers "advertise or promot[e]" their products. This approach seems to be much more consistent with the intentions behind the labeling act of 1969.
[9] See, i.e., Townsend v. General Motors Corp., 642 So.2d 411,415 (Ala. 1994) ("Under the AEMLD, a manufacturer has the duty to design and manufacture a product that is reasonably safe for its intended purpose and use."). See also Casrell v. AltecIndustries, Inc., 335 So.2d 128 (Ala. 1976); Atkins v. AmericanMotors Corp., 335 So.2d 134 (Ala. 1976).
[10] See also Jeffrey R. Stern, "Preemption Doctrine and the Failure of Textualism in Cipollone v. Liggett Group," 80Va.L.Rev. 979 (1994).
 "Although Justice Stevens failed to address explicitly the design defect claims, because he did not preempt the failure to warn claims based on negligent research and testing, it can be assumed that Justice Stevens did not [intend to] preempt . . . design defect claims."
Id. at 1000.