Paul L. SPAIN as Administrator for the Estate of Carolyn Watts Spain, Deceased, Plaintiff-Appellant,

v.

BROWN & WILLIAMSON TOBACCO CORPORATION, Philip Morris, Inc., et al., Defendants-Appellees.

No. 99-15021.

United States Court of Appeals,

Eleventh Circuit.

Oct. 18, 2000.

Appeal from the United States District Court for the Northern District of Alabama. (No. 99-02424-CV-AR-S), William M. Acker, Jr., Judge.

Before CARNES, MARCUS and FARRIS[*], Circuit Judges.

CARNES, Circuit Judge:

This is a cigarette product liability case initially brought in the Alabama state courts by Paul Spain, as administrator of the estate of Carolyn Spain, against Phillip Morris, Inc., R.J. Reynolds Tobacco Company, and Brown & Williamson Tobacco Corporation, seeking recovery under the Alabama wrongful death statute. After removing the case to federal court on diversity grounds, the defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Stating only that the motion was "well-taken," the district court granted it and dismissed all of Spain's claims with prejudice. Spain has appealed. For reasons we will explain, we have concluded that certain issues of state law should be certified to the Alabama Supreme Court.

## I. BACKGROUND

### A. FACTS

Because the case is before us on a Rule 12(b)(6) dismissal, we take the facts from the allegations in the complaint, assuming those allegations to be true. *See Brown v. Crawford County, Georgia,* 960 F.2d 1002, 1010 (11th Cir.1992).

Carolyn Spain started smoking cigarettes in 1962, when she was "approximately 15 years of age and was a multi-pack per day smoker." She became addicted to the nicotine in cigarettes early on and was unaware at the time that she was becoming addicted. She primarily smoked cigarettes manufactured by Phillip Morris, Inc., R.J. Reynolds Tobacco Company, and Brown & Williamson Tobacco Corporation. Carolyn's smoking was the proximate cause of her lung cancer, which was diagnosed on August 15, 1998.

[*]Honorable Jerome Farris, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Unable to stop, she continued smoking until 1999. She has since died.[1]

## B. PROCEDURAL HISTORY

On August 5, 1999, Paul Spain, as administrator of the estate of Carolyn Watts Spain, filed suit against the defendants in state court, seeking recovery under the Alabama wrongful death statute based on the defendants' alleged wrongful acts and omissions in connection with the manufacture, design and sale of cigarettes. The complaint asserted five causes of action: (1) liability under the Alabama Extended Manufacturers Liability Doctrine ("AEMLD"); (2) negligence; (3) wantonness; (4) breach of warranty; and (5) conspiracy.[2]

The defendants removed the case to federal court,[3] and after removal filed a motion to dismiss all of Spain's claims under Federal Rule of Civil Procedure 12(b)(6). They argued, among other things, that the claims were barred by Alabama's rule of repose and the applicable statutes of limitations; that as a matter of Alabama law cigarettes are not unreasonably dangerous; and that some of Spain's claims were preempted by federal law. Stating only that the motion was "well-taken," the district court granted it and dismissed all of Spain's claims with prejudice. This is Spain's appeal of that dismissal.[4]

## II. DISCUSSION

Although federal court jurisdiction is premised on diversity of citizenship, important federal law preemption issues will be presented for us to decide if, and only if, Spain's claims survive the multitude of state law arguments and defenses the defendants have raised. We will begin our discussion by describing the federal law preemption issue in this case, and then the state law issues, the resolution of which will define and may render academic that federal issue.

---

[1] The complaint does not indicate whether Carolyn Spain continued to smoke until she died or the date of her death. About the date of her death, we know only that she died sometime between the diagnosis of lung cancer on August 15, 1998 and the filing of the complaint in this case on August 5, 1999.

[2] Spain's AEMLD claim appears to encompass two separate claims—a claim for design defect and a claim for failure to warn.

[3] Spain had also sued a number of non-diverse defendants, but he moved to dismiss all of them and that motion was granted.

[4] Spain's case is not controlled by this Court's recent decision in *United Food & Commercial Workers Unions, Employers Health & Welfare Fund v. Philip Morris, Inc.,* 223 F.3d 1271 (11th Cir.2000). We held there that a complaint filed by an employee health and welfare benefit plan failed to state a claim, because there was no proximate cause between the defendant cigarette companies' actions which allegedly injured participants in the plan and any loss suffered by the plan. *See id.* at 1273.

A. THE FEDERAL LAW ISSUE

Section 5(b) of the Federal Cigarette Labeling and Advertising Act of 1965 ("1965 Act"), as amended by the Public Health Cigarette Smoking Act of 1969 ("Labeling Act" or "1969 Act"), states: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are [lawfully] labeled." 15 U.S.C. § 1334(b). The lawfully required label is the familiar "WARNING: THE SURGEON GENERAL HAS DETERMINED THAT CIGARETTE SMOKING IS DANGEROUS TO YOUR HEALTH." *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 508, 112 S.Ct. 2608, 2613, 120 L.Ed.2d 407 (1992) (plurality opinion).

In *Cipollone,* the Supreme Court set forth a test to determine which state law claims are preempted by the Labeling Act. *See id.* at 524, 112 S.Ct. at 2621. A common law or other state law claim is preempted if "the legal duty that is the predicate of the ... action constitutes a 'requirement or prohibition to based on smoking and health ... imposed under State law with respect to ... advertising or promotion,' giving that clause a fair but narrow reading." *Id.*

The defendants contend that the post-1969 portion of the claims Spain asserts are precisely the type of claims *Cipollone* held to be preempted, because those claims seek to impose a duty to provide warnings over and beyond those required by the Labeling Act.[5] Citing the Alabama Supreme Court's decision in *Cantley v. Lorillard Tobacco Co.,* 681 So.2d 1057, 1061-62 (Ala.1996), the defendants argue that under Alabama law they had no duty to provide additional warnings beyond those required by federal law and no duty to communicate even those warnings by means other than advertising or promotion.

Spain, on the other hand, contends that the Labeling Act had limited preemptive effect. He maintains that under *Cipollone* and *Cantley,* many of his claims (including his pre-1970 claims in their entirety, his post-1969 claims for defect in product, misrepresentation and conspiracy, his post-1969 claims for negligence based on testing or research practices, and his post-1969 claims for negligence based on failure to disclose

_____

[5]The 1965 Act prohibited States from requiring any "statement relating to smoking and health ... in the advertising of [properly labeled] cigarettes." *Cipollone,* 505 U.S. at 518, 112 S.Ct. at 2618. The Supreme Court held in *Cipollone* that the 1965 Act "only pre-empted state and federal rulemaking bodies from mandating particular cautionary statements and did not pre-empt state-law damages actions." *Id.* at 519-20, 112 S.Ct. at 2619.

However, because the 1969 Act changed the language of the preemption provision to prohibit any "requirement or prohibition," the Court found that the preemption provision of the 1969 Act was much broader than that of the 1965 Act. The defendants do not assert that Spain's claims are preempted by the 1965 Act and rely solely on the 1969 Act for their preemption argument.

facts through channels of communication other than advertising or promotion) survive federal preemption.[6]

Finally, Spain argues that there is a genuine issue of material fact as to whether the defendants violated the Labeling Act, although he does not specify what consequences he thinks follow from such a failure.

At the outset, we recognize that Spain's state law claims, insofar as they relate to the time period before the effective date of the 1969 Labeling Act, are not preempted by that federal legislation. Those claims' viability or lack of it will depend entirely upon disputed issues of state law. So, "[t]here is no way for us to avoid [those] state law issues in this case," *Blue Cross & Blue Shield of Alabama, Inc. v. Nielson,* 116 F.3d 1406, 1412 (11th Cir.1997).

In addition to requiring a state law answer to the pre-1969 portion of Spain's claims, this case may also require us to decide the federal law issue of which, if any, of Spain's post-1969 claims are preempted by the Labeling Act. But we will not reach that federal law issue unless some of those post-1969 claims are otherwise viable under state law. In other words, if Spain has no post-1969 claims as a matter of state law, or if there are complete state law defenses to those claims, then we will not reach the federal law preemption issue. That is why resolution of the state law issues is certainly the first, and depending upon how those issues are resolved could be the final, step in deciding this case.

## B. THE STATE LAW ISSUES

### 1. When the Causes of Action Accrued for Purposes of the Applicable Statutes of Limitations

There is no dispute about which statutes of limitations apply to Spain's claims. The parties agree that the AEMLD, negligence, wantonness and conspiracy claims are subject to a 2-year statute of limitations, *see* Ala.Code § 6-2-38, and that the breach of warranty claim is subject to a 4-year statute of limitations, *see* Ala.Code § 7-2-725. The dispute is about when the claims arose, or the causes of action accrued, and thus when those statutes of limitations began to run.

Alabama's general rule regarding statutes of limitations is as follows:

> If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action. Nor does plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered.

---

[6]Spain does not explain his varying use of the 1970 and 1969 dates to describe the claims that he argues are not preempted.

*Kelly v. Shropshire,* 199 Ala. 602, 75 So. 291, 292 (1917) (as quoted in *Garrett v. Raytheon Co.,* 368 So.2d 516, 519 (Ala.1979)).  However:

> there are cases where the act complained of does not itself constitute a legal injury at the time, but plaintiff's injury only comes as a result of, and in furtherance and subsequent development of, the act defendant has done.  In such cases, the cause of action accrues, and the statute of limitations begins to run, when, and only when, the damages are sustained.

*Garrett v. Raytheon Co.,* 368 So.2d at 519 (internal marks omitted);  *see generally McWilliams v. Union Pacific Resources Co.,* 569 So.2d 702, 704-06 (Ala.1990) (Maddox, J., concurring specially) (discussing the "two lines of cases dealing with the tolling of the statute of limitations where the damages be` came apparent only sometime after the actual wrong was committed").[7]

The defendants argue that, taking the complaint as true, a "completed wrong" occurred, and thus Spain's cause of action arose, when Carolyn became addicted to cigarettes shortly after she began smoking in 1962.  As a result, they contend, Spain's claims are barred in their entirety by the applicable statutes of limitations.  Spain, on the other hand, maintains that Carolyn did not have an actual injury, and thus the cause of action did not accrue, until August 15, 1998, when Carolyn was diagnosed with lung cancer.  Accordingly, Spain argues that the complaint, which was filed on August 5, 1999, was filed within the statutes of limitations.

If defendants are correct that these kinds of causes of action accrue when a smoker becomes addicted to cigarettes, then all of the claims in this case are barred by statutes of limitations.  By contrast, if Spain is correct that the causes of action did not accrue until Carolyn was diagnosed with lung cancer, which occurred less than a year before the filing of the complaint, then none of the claims is barred on statute of limitations grounds.  So, the question of when the causes of action accrued for statute of limitations purposes is critically important to, and may be dispositive of, this case.

Unfortunately, we have been unable to locate a clear answer to this state law issue.  The Alabama Supreme Court has yet to address statute of limitations issues in the context of a cigarette products liability case, and it is uncertain whether the "completed wrong" sufficient to begin the running of the applicable limitations period occurs at the time of addiction to cigarette smoking, the time of the last exposure to

---

[7]*Garrett v. Raytheon Co.,* 368 So.2d 516 (Ala.1979), itself was not one of those cases.  In *Garrett,* a plaintiff brought suit to recover for injuries as a result of his exposure to radiation during 1955-1957.  The Court held that the injury occurred on the date or dates of exposure, rather than occurring when "it made itself manifest by its symptoms."  *Id.* at 521.  The fact that the plaintiff was unaware of the adverse medical effects until a doctor informed him of radiation's harmful affects in 1977 was held to be irrelevant.  *See id.* at 518-19.

cigarette smoke, the time a smoking-related illness or injury is diagnosed, or some other time.[8]  The Alabama Supreme Court could choose any of a number of alternatives.  *Compare Garrett,* 368 So.2d at 519 (last date of exposure to radiation begins the running of statute of limitations);  *with Chatham v. CSX Transp., Inc.,* 613 So.2d 341, 344 (Ala.1993) (FELA case interpreting a Third Circuit opinion as implying that if discovery of injury occurs before the end of exposure, the discovery of injury marks the beginning of the limitations period);  *and Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168, 170 (5th Cir.1996) (continuing tort rule does not apply where plaintiff did not quit smoking until 1987 but learned of his injury in 1986, but that result was reached through application of the discovery rule).[9]  Whatever alternative it chooses, the Alabama Supreme Court is the proper court to make the choice.  "[I]t would be irresponsible of us not to give the Alabama Supreme Court an opportunity to decide th[is] difficult, sensitive and [potentially] dispositive Alabama law issue[ ]...."  *Blue Cross & Blue Shield of Alabama,* 116 F.3d at 1413.

### 2. The Rule of Repose Issues

On a related note, the defendants also contend that Alabama rule of repose bars Spain's claims.  Spain disagrees, maintaining not only that his case was timely filed, but also that the rule of repose is inapplicable in personal injury tort cases like this one.

Alabama's rule of repose is similar to a statute of limitations but broader in its scope.  "[T]he only element of the rule of repose is time.  It is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence obscured."  *Boshell v. Keith,* 418 So.2d 89, 91 (Ala.1982) (citations omitted).  The rule of repose operates as an absolute bar to claims that are not commenced within twenty years from the time they could have been.  *See id.* at 91.  As the Supreme Court of Alabama stated:

> As a matter of public policy ... it has long been the settled policy of this State ... that antiquated demands will not be considered by the courts, and that, without regard to any statute of limitations,

---

[8]The Alabama Supreme Court did not explicitly address the accrual of the cause of action and the running of the statute of limitations in *Cantley,* 681 So.2d 1057, and we are not convinced that opinion intended to imply any view on the matter.

[9]We do note an interesting result that would occur if the *Garrett* holding were extended without modification to this case.  In *Garrett,* the Alabama Supreme Court concluded that radiation exposure was a continuous tort and that the statute of limitations began to run on the date of the last exposure to radiation.  *Garrett,* 368 So.2d at 520-21.  Accordingly, the plaintiff's cause of action accrued by 1957, the last day of exposure, despite the fact that he was not diagnosed with radiation-related maladies until twenty years *after* then.  *See id.*  Here, if the causes of action accrued when Carolyn was last exposed to cigarette smoke, they will have accrued in 1999, despite the fact that she was diagnosed with a smoking-related illness the year *before* then.

there must be a time beyond which human transactions will not be inquired into.

*Snodgrass v. Snodgrass,* 176 Ala. 276, 58 So. 201, 201 (1912) (as quoted in *Boshell,* 418 So.2d at 91).

We are unsure whether the rule of repose is applicable to this case. Although it has been applied to a number of different actions, *see, e.g., Tierce v. Ellis,* 624 So.2d 553 (Ala.1993) (applying the rule of repose to bar a declaratory judgment action to establish paternity for the sake of determining estate's heirs), we have not been cited to nor have we located an Alabama Supreme Court case applying the rule of repose to a personal injury tort suit. However, the Court of Civil Appeals of Alabama has indicated in at least one case that the rule of repose can be applied to such an action. *See Willis v. Shadow Lawn Memorial Park,* 709 So.2d 1241 (Ala.Civ.App.1998) (question of fact concerning the time that plaintiff's claims accrued prevents application of rule of repose in suit for fraud, conversion, breach of burial contract, negligence, wantonness, and intentional or reckless infliction of emotional distress). Again, we believe the Alabama Supreme Court should decide the purely state law issue of whether the rule of repose operates to bar Spain's claims, which is yet another issue the resolution of which could dispose of this case.

The statute of limitations and rule of repose issues cut across the entire case, and it is important that Alabama's highest court be given the opportunity to answer them: "The final arbiter of state law is the state supreme court, which is another way of saying that Alabama law is what the Alabama Supreme Court says it is. Because the only authoritative voice on Alabama law is the Alabama Supreme Court, it is axiomatic that that court is the best one to decide issues of Alabama law." *Blue Cross & Blue Shield of Alabama,* 116 F.3d at 1413 (citations omitted).

The answers to the statute of limitations and rule of repose questions could dispose of this case, but if they do not there are other state law issues that need to be decided. Spain's substantive claims, which include claims under the AEMLD, and claims premised on negligence, wantonness, breach of warranty, and conspiracy, are all based on state law.

*3. The Issues Involving Spain's AEMLD Claim*

The Alabama Extended Manufacturer's Liability Doctrine was first recognized by the Alabama Supreme Court in *Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala.1976), and its companion case, *Casrell v. Altec Indus., Inc.,* 335 So.2d 128 (Ala.1976). *See Wakeland v. Brown & Williamson Tobacco Corp.,* 996 F.Supp. 1213, 1217 (S.D.Ala.1998). To recover under the AEMLD, a plaintiff must show, among other things, that "an injury was caused by one who sold a product in a defective condition that made the

product unreasonably dangerous to the ultimate user or consumer...." *Bell v. T.R. Miller Mill Co., Inc.,* --- So.2d ---- (Ala.2000); *see also Allen v. Delchamps, Inc.,* 624 So.2d 1065, 1068 (Ala.1993**)**.

Under Alabama law, a product is not unreasonably dangerous unless it fails to "meet the reasonable safety expectations of an ordinary consumer, that is, an objective ordinary consumer possessed of the ordinary knowledge common to the community." *Deere & Co. v. Grose,* 586 So.2d 196, 198 (Ala.1991) (internal marks and citations omitted); *see also Casrell,* 335 So.2d at 133 (establishing "reasonable expectations" test and adopting comment i to § 402A of the Restatement (Second) of Torts); *Ex Parte Chevron Chemical Co.,* 720 So.2d 922, 927 (Ala.1998) ("unreasonably dangerous" product does not include "a product the dangers of which the consumer could be expected to be aware of, an awareness that may be enlightened by a warning."). "Although, under Alabama law, a jury ordinarily evaluates a plaintiff's claims that a product is defective, our review of the pertinent case law convinces us that certain products whose inherent danger is patent and obvious, do not, as a matter of law, involve defects of a sort that a jury should resolve." *Elliott v. Brunswick Corp.,* 903 F.2d 1505, 1507 (11th Cir.1990).

The defendants contend that cigarettes are not unreasonably dangerous as a matter of Alabama law, because the risks of smoking have been commonly known among ordinary consumers for many years.[10] They point to published scientific studies from 1920 to 1962; to *Austin v. State of Tennessee,* 179 U.S. 343, 348, 21 S.Ct. 132, 45 L.Ed. 224 (1900), a 1900 Supreme Court case which, they contend, recognized the risks of cigarettes; and to an Alabama law, more than a century old, which restricted the use of cigarettes by minors. Spain responds that a jury should determine whether products are unreasonably dangerous, and that there is a question as to whether in the early 1960s the general public was aware of the dangerousness of cigarettes.

Carolyn started smoking sometime in 1962 and became addicted to cigarettes soon thereafter. The federally mandated warnings did not appear until well after, but there is evidence that people in general knew prior to 1962 that smoking is dangerous to health. In its 1992 opinion in *Cipollone,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407, the Supreme Court recognized that the dangers of cigarettes were well-known and

---

[10]The defendants also argue that Spain failed to adequately plead a specific defect in the design or manufacture of the defendants' products and failed to allege that at the time of manufacture a safer, practical alternative design was available which would have prevented Carolyn's injury. In their brief to this Court, the defendants relegate that argument to two sentences in a footnote.

had been for decades.[11] *See id.* at 508, 112 S.Ct. at 2613; *accord, Allgood,* 80 F.3d at 172 (affirming district court's alternative ruling in case involving smoker who was diagnosed with emphysema in 1986 and died in 1989 that claims based on failure to warn were barred because smoking risks were common knowledge; observing that "[l]ike the dangers of alcohol consumption, the dangers of cigarette smoking have long been known to the community"); *Roysdon v. R.J. Reynolds Tobacco Co.,* 849 F.2d 230, 236 (6th Cir.1988) (affirming district court ruling that as of 1974, the relevant date in that case, knowledge of the risks of cigarette smoking was widespread and precluded existence of a jury question on whether cigarettes are unreasonably dangerous ). Moreover, the *Report of the Task Force on Tobacco Litigation Submitted to Governor James and Attorney General Sessions,* 27 Cumb. L. Rev. 577 (1996) stated, "Virtually every smoker in Alabama has known (or at least should have known) for many years that cigarettes are dangerous." *Id.* at 590.

But neither the *Allgood* nor the *Roysdon* decision involved Alabama law, and the Alabama Supreme Court is not bound by those decisions anyway. There is no decision of the Alabama Supreme Court close enough on point to remove our uncertainty about how that Court will decide the issue when it is presented,

---

[11]The Court wrote:

> Although physicians had suspected a link between smoking and illness for centuries, the first medical studies of that connection did not appear until the 1920's. The ensuing decades saw a wide range of epidemiologic and laboratory studies on the health hazards of smoking. Thus, by the time the Surgeon General convened an advisory committee to examine the issue in 1962, there were more than 7,000 publications examining the relationship between smoking and health.
>
> In 1964, the advisory committee issued its report, which stated as its central conclusion: "Cigarette smoking is a health hazard of sufficient importance in the United States to warrant appropriate remedial action." Relying in part on that report, the Federal Trade Commission (FTC), which had long regulated unfair and deceptive advertising practices in the cigarette industry, promulgated a new trade regulation rule. That rule, which was to take effect January 1, 1965, established that it would be a violation of the Federal Trade Commission Act "to fail to disclose, clearly and prominently, in all advertising and on every pack, box, carton, or container [of cigarettes] that cigarette smoking is dangerous to health and may cause death from cancer and other diseases." Several States also moved to regulate the advertising and labeling of cigarettes. Upon a congressional request, the FTC postponed enforcement of its new regulation for six months. In July 1965, Congress enacted the Federal Cigarette Labeling and Advertising Act (1965 Act or Act). The 1965 Act effectively adopted half of the FTC's regulation: the Act mandated warnings on cigarette packages (§ 5(a)), but barred the requirement of such warnings in cigarette advertising (§ 5(b)).

*Cipollone,* 505 U.S. at 513-14, 112 S.Ct. at 2615-16 (footnotes and internal citations omitted). The smoker in the *Cipollone* case began smoking in 1942 and died in 1984. *See id.* at 508, 112 S.Ct. at 2613.

as it inevitably will be in some case. Moreover, the answer to this question is potentially dispositive of the AEMLD claim, and could render unnecessary any decision by this Court on the federal preemption issues relating to that claim. For these reasons, and because we are certifying the statute of limitations and rule of repose issues to that Court anyway, we deem it prudent to send as well the question of whether cigarettes are unreasonably dangerous as a matter of Alabama law, both before and after the federally mandated warnings appeared.

### 4. The Issues Involving the Other State Law Claims

The issues we have discussed so far, which relate to the statute of limitations, the rule of repose, and the AEMLD, involve unsettled and potentially dispositive state law questions upon which we need guidance. There are other state law issues in this case which we are reasonably confident that we can decide based upon settled Alabama law. For that reason, we would not bother the Alabama Supreme Court with these issues if they were the only state law issues in the case. However, since we are certifying the other state law questions anyway, we think it prudent to set out our understanding of state law on these other points and invite the Alabama Supreme Court to correct our view on them if that view is wrong.

### a. Negligence and Wantonness

The defendants contend that Spain's negligence and wantonness claims are merged into his AEMLD claim as a matter of Alabama law because those claims are based on the same underlying allegations and theory, which is that cigarettes are unreasonably dangerous. In *Veal v. Teleflex, Inc.,* 586 So.2d 188 (Ala.1991), the Court held that the trial court did not err when it instructed the jury only on the plaintiff's AEMLD claim and refused to instruct the jury on negligence and wantonness. The court stated that the substance of plaintiff's complaint "was that it placed into the stream of commerce a product that was unreasonably dangerous for its intended use" and that constituted an AEMLD claim. *See id.* at 190-91; *accord Wakeland,* 996 F.Supp. at 1217-18.

In light of *Veal,* and because the only allegation in the complaint's counts for negligence and wantonness that are not in the AEMLD count is that the "[d]efendants negligently designed, manufactured, sold, marketed and/or failed to warn about cigarettes that were unreasonably dangerous ...," we are convinced that the negligence and wantonness claims in this case merge into the AEMLD claim.[12]

---

[12]We do note that *Veal* involved a negligent or wanton design claim, but it did not also involve, as the present case does, a negligent or wanton failure to warn claim. *See Tillman v. Reynolds Tobacco Co.,* 89 F.Supp.2d 1297, 1299-1300 (S.D.Ala.2000)(characterizing cases cited by plaintiff involving negligent or

b. *Breach of Warranty*

The defendants contend that Spain's implied warranty of merchantability claim must fail because Spain alleges only that cigarettes are unreasonably dangerous and defectively designed, manufactured and marketed, and not that they were commercially unfit or unsuitable for smoking. The defendants argue that Spain's allegations constitute a products liability claim, instead of a breach of implied warranty of merchantability claim.

Ala.Code § 7-2-314, which governs the implied warranty of merchantability, provides as follows:

> Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

Ala.Code § 7-2-314(1). In order to be merchantable, goods must be fit "for the ordinary purposes for which such goods are used." *See Allen,* 624 So.2d at 1068.

As we read Spain's complaint, his theory is that the cigarettes were unfit for the ordinary purpose for which they are used because they caused cancer, making them unreasonably dangerous and not merchantable. The Alabama Supreme Court rejected a similar claim and stated that "[s]uch an argument ignores the clear distinction between causes of action arising under tort law and those arising under the [Uniform Commercial Code] as adopted in Alabama." *Shell v. Union Oil Co.,* 489 So.2d 569, 571 (Ala.1986) (no claim for breach of warranty regarding product containing benzene, a carcinogen known to cause leukemia, when product was in conformance with specifications; such a claim is instead an AEMLD action). Unless the Alabama Supreme Court tells us differently, we are convinced that the complaint does not state a claim for breach of an implied warranty of merchantability.[13]

c. *Conspiracy*

The defendants contend that Spain's conspiracy count cannot stand, because it is based on claims of alleged fraudulent suppression and fraudulent misrepresentation of information about smoking risks that are themselves not viable.[14] They argue that those claims are not viable, because Alabama imposes no duty to

---

wanton failure to warn claims as "inapposite" to that case which involved a negligent or wanton design claim), *appeal docketed,* No. 00-10963 (11th Cir. Feb. 18, 2000).

[13]Spain abandoned his express warranty claim at oral argument.

[14]Spain's conspiracy claim also appears to be premised in part on failure to warn claims. If the Alabama Supreme Court holds that the failure to warn claims survive the defendants' state law arguments and defenses, so that they potentially could be a basis for Spain's conspiracy count, we will have to decide whether the failure to warn claims are preempted by the Labeling Act and thus could not be a basis for Spain's conspiracy count.

disclose facts that are already known and the risks of smoking were common knowledge.[15]

"[A] conspiracy itself furnishes no cause of action.  The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed.  If the underlying cause of action is not viable, the conspiracy claim must also fail."  *Allied Supply Co., Inc. v. Brown,* 585 So.2d 33, 36 (Ala.1991) (internal citations omitted).  Therefore, to the extent Spain's conspiracy claim is premised on claims of fraudulent suppression and fraudulent misrepresentation, those claims must be viable for his conspiracy claim to be.

Under Alabama law, a fraudulent suppression claim requires a plaintiff to show:

> (1) that the defendant had a duty to disclose an existing material fact;  (2) that the defendant suppressed that existing material fact;  (3) that the defendant had actual knowledge of the fact;  (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting;  and (5) that the plaintiff suffered actual damage as a proximate result of acting or not acting.

*Ex Parte Household Retail Services,* 744 So.2d 871, 879 (Ala.1999).  Under *Cantley,* there is no state law duty to disclose facts other than through advertising or promotion.  *See Cantley,* 681 So.2d at 1061-62.  Consequently, unless the Alabama Supreme Court tells us differently, we are convinced that the fraudulent suppression claim fails and the conspiracy claim should be dismissed to the extent it relies on the fraudulent suppression claim.

A fraudulent misrepresentation claim requires a plaintiff to show:

> (a) that the defendant made a false misrepresentation concerning a material fact;  (b) which (1) the defendant either knew was false when made, or (2) was made recklessly and without regard to its truth or falsity, or (3) was made by telling the plaintiff that the defendant had knowledge that the representation was true while not having such knowledge;  (c) which the plaintiff justifiably relied upon;  and (d) damage to the plaintiff proximately resulting from his reliance.

*Ex Parte Household Retail Services,* 744 So.2d at 877 (internal marks and citations omitted).  The Alabama Supreme Court's answer to the question we are certifying it about whether cigarettes are unreasonably dangerous under the AEMLD may resolve the issue of whether Spain has a valid fraudulent misrepresentation claim.  If that Court concludes cigarettes are not unreasonably dangerous as a matter of Alabama law, we are convinced that Spain will be unable to establish Carolyn's justifiable reliance and as a result, his fraudulent misrepresentation claim will fail and his conspiracy claim should be dismissed to the extent it relies on the fraudulent misrepresentation claim.  That conclusion is, of course, subject to revision if the Alabama Supreme Court tells us that the state law premises for it are mistaken.

---

[15]The defendants also contend that Spain does not allege with the specificity required by Federal Rule of Civil Procedure 9(b) the fraudulent misrepresentation made to Carolyn.  Additionally, the defendants argue that the complaint is devoid of an allegation that Carolyn relied on any statements of the defendants, much less reasonably relied to her detriment.

## C. THE CERTIFIED QUESTIONS

For the foregoing reasons, we respectfully certify to the Alabama Supreme Court the following questions:

1. When does the Alabama statute of limitations for claims brought under the AEMLD, and claims premised on negligence, wantonness, breach of warranty and conspiracy begin to run in a smoking products liability case?

2. Does the Alabama rule of repose apply in a smoking products liability case?

3. If so, when does the Alabama rule of repose begin to run in a smoking products liability case?

4. Before the appearance of federally mandated warning labels on cigarettes packages, were cigarettes "unreasonably dangerous" under the AEMLD?

5. Since the appearance of federally mandated warning labels on cigarettes packages, have cigarettes been "unreasonably dangerous" under the AEMLD?

In addition to certifying the preceding questions to the Alabama Supreme Court, we also invite that Court to tell us if the conclusions we have reached about the following state law issues are incorrect:

a. that the negligence and wantonness claims merge into an AEMLD claim;

b. that the sale of cigarettes does not violate the implied warranty of merchantability under Code of Alabama 1975, § 7-2-314;

c. that the fraudulent suppression claim, which is a basis for Spain's conspiracy claim, is not viable under Alabama law; and

d. that, if cigarettes are not unreasonably dangerous as a matter of Alabama law, the fraudulent misrepresentation claim, which is a basis for the conspiracy claim, is not viable under Alabama law.

Our phrasing of the certified questions is not intended to restrict the scope of inquiry by the Supreme Court of Alabama. As we have stated before:

> [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

*Blue Cross & Blue Shield of Alabama,* 116 F.3d at 1414 (quoting *Martinez v. Rodriquez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968) (citations omitted)). That means, among other things, that if we have overlooked or mischaracterized any state law issues or inartfully stated any of the questions we have posed, we hope the Alabama Supreme Court will feel free to make the necessary corrections.[16]

---

[16]We cannot and do not certify to the Alabama Supreme Court in this case the federal preemption issues, if any, that may exist after the state law questions are answered. While state and federal courts have concurrent jurisdiction to decide federal law issues such as preemption, federal courts have the responsibility for deciding those issues when they arise in federal court, and that is no less true when

The entire record, including the briefs of the parties, is transmitted herewith.

---

federal jurisdiction is based upon diversity of citizenship.  Stated somewhat differently, a federal court may not certify federal law issues to a state supreme court, and we do not purport to do so.