[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 20, 2006
THOMAS K. KAHN
CLERK

----------------------------------------

No. 05-13735
Non-Argument Calendar

----------------------------------------

D.C. Docket No. 04-00348-CV-T-N

JAMES ROGER BLACKSTON,
BRADLEY W. BARBER,

Plaintiffs-Appellants,

versus

STATE OF ALABAMA,
GORMAN HOUSTON, individually and
in his official capacity as Chief Justice of
The Alabama Supreme Court,
RANDY HELMS, individually and in his official
capacity as Administrative Director of Courts,
ALEX JACKSON, individually and in his official
capacity as staff attorney for the Alabama Supreme Court,
BOB MADDOX, individually and in his official capacity
as employee of Administrative Office of Courts,
DRAYTON NABERS,

Defendants-Appellees.

----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Alabama
----------------------------------------------------------------

**(June 20, 2006)**

Before EDMONDSON, Chief Judge, ANDERSON and CARNES, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants James Roger Blackston and Bradley Barber appeal the district court's dismissal of their pro se civil rights action, brought under 42 U.S.C. § 1983 against Defendants and the State of Alabama (whom we collectively refer to as "the State"), alleging contempt of a court order and violations of federal constitutional law and state law. No reversible error has been shown; we affirm.

This appeal arises from Plaintiffs' third federal lawsuit challenging acts of the Alabama Advisory Committee on Child Support Guidelines and Enforcement (the "Committee") in reviewing and recommending changes to Alabama's Child Support Guidelines (the "Guidelines"). Plaintiffs are members of an advocacy group, the National Congress for Fathers and Children ("NCFC"). The first suit ("Blackston I") resulted in the parties entering a settlement agreement (the "1995 Settlement"). Plaintiffs filed the second suit ("Blackston II") after the State refused to comply with the 1995 Settlement: Blackston II resulted in another settlement (the "2003 Settlement").

Plaintiffs filed the present suit based on the State's alleged disregard for both settlement agreements. In their contempt claim, Plaintiffs asserted that the

State in many ways violated the 2003 Settlement.[1]  Based on the facts alleged in the contempt claim, Plaintiffs contended that the State committed a breach of contract and violated the Contracts Clause of the U.S. and Alabama Constitutions. Plaintiffs then raised a First Amendment claim, based on allegations that Policy Studies, Inc. ("PSI") (whom the Committee chose to update the child support schedule) published a copyrighted child support schedule in Adobe Portable Document Format ("PDF") to the Committee and to lawyers in Alabama, but not to them.  Plaintiffs asserted that they were denied the right to distribute this information to the public because of the copyright.  Plaintiffs also claimed violations of their equal protection rights based on: (1) Alabama lawyers, but not them, receiving the PSI report in PDF format; (2) the State's failure to convene the Committee in a timely manner and the selection of PSI as sole vendor to update the child support schedule; and (3) the President of the Alabama Child Support

---

[1]Specifically, Plaintiffs argued that the State violated the 2003 Settlement: (1) by not "convening" a new Committee within three months of 25 September 2003; (2) by entering a contract with Policy Studies, Inc. ("PSI") in January 2004 as the sole vendor to update the child support schedule in a secret meeting that excluded them; (3) by not contracting with PSI or "some other comparable entity" by excluding other vendors and not soliciting their input; (4) by excluding them from the process of reviewing the Guidelines from September 2003 to February 2004; (5) by holding meetings in the Alabama Judicial Building, requiring guest speakers to register in advance, and failing to notify the public of the meeting, in violation of the requirement of holding meetings open to the public; (6) by failing to follow the "rules of order," or assemble a quorum for the Committee's March 2004 meeting; and (7) by failing to keep Barber, who is an alternate member of the Committee, informed of the Committee's business.

Association ("ACSA") being designated an <u>ex officio</u> member of the Committee, but Barber, the NCFC President, was not. Plaintiffs raised due process claims based on: (1) the same facts as the contempt claim; (2) the selection of PSI; and (3) the lack of solicitation of input from Plaintiffs.

Plaintiffs argue that the district court erred by dismissing the contempt claim. Citing 28 U.S.C. § 1631, they claim the court should have transferred the claim to the district court judge who handled <u>Blackston II</u>. We see no abuse of discretion in the district court's decision to dismiss, rather than to transfer, the action. <u>See</u> <u>Howell v. Tanner</u>, 650 F.2d 610, 616 (5th Cir. Unit B July 1981) (reviewing transfer decision for abuse of discretion). Plaintiffs' contempt claim, based on violations of the 2003 settlement, should have been filed as part of <u>Blackston II</u>. <u>See</u> <u>Hodgson v. Hotard</u>, 436 F.2d 1110, 1114 (5th Cir. 1971) (writing that filing of civil contempt petition is not institution of independent proceeding but part of original case). And the district court dismissed the contempt claim without prejudice, so that Plaintiffs have the opportunity to raise this claim in <u>Blackston II</u>.

Plaintiffs next argue that the district court should have allowed them to amend the complaint before dismissal. The district court did not abuse its discretion in failing to allow Plaintiffs to amend their complaint. <u>See</u> <u>Bryant v.</u>

4

Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).  Plaintiffs concede that they did not request leave to amend.  And, as we conclude below, the district court did not err in dismissing Plaintiffs' claims.  Our review of Plaintiffs' voluminous pleadings does not suggest that they could have amended the complaint to state a proper claim.  See Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) (stating that, although court ordinarily should give party at least one opportunity to amend before dismissal, amendment need not be allowed where amendment would be futile).

Plaintiffs argue that the district court erroneously dismissed their First Amendment, equal protection, and due process claims.  We review de novo motions to dismiss for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6): we accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff.  Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1187 (11th Cir. 2004).

About the First Amendment claim, we agree with the district court that this claim is moot.  After the filing of this lawsuit, the State posted the child support schedule on its website in PDF format.  See Al Najjar v. Ashcroft, 273 F.3d 1330, 1335-36 (11th Cir. 2001) (stating that case is moot when issue presented no longer is "live" or parties lack a legally cognizable interest in the outcome) (citation

5

omitted). Plaintiffs point to the voluntary cessation doctrine, an exception to the general rule that a case is mooted by the end of the offending behavior: they contend that this issue is not moot because a reasonable likelihood exists of a recurrence of the State's allegedly objectionable acts. See Troiano v. Supervisor of Elections in Palm Beach County, 382 F.3d 1276, 1282-83 (11th Cir. 2004).

But "when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur." Id. at 1283 (emphasis in original). Plaintiffs never asserted that the State stopped them from distributing the schedule. That the schedule now is available to the public via the internet in PDF format shows that the alleged First Amendment injury was cured by the State's acts. Plaintiffs, thus, have alleged no facts demonstrating that the allegedly objectionable behavior will recur. The district court correctly dismissed Plaintiffs' First Amendment claim as moot.

We also affirm the district court's dismissal of Plaintiffs' equal protection claims. The claim about other lawyers in Alabama receiving the schedule in PDF format is moot for the same reason as his First Amendment claim.

And we reject the claim suggesting that the ACSA received preferential treatment over the NCFC because the ACSA president is an ex officio member of the Committee. To plead properly an equal protection claim, a plaintiff must

6

allege that similarly situated persons have been treated disparately through state action. See Thigpen v. Bibb County, Ga., Sheriff's Dep't, 223 F.3d 1231, 1237 (11th Cir. 2000), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. 2061 (2002).[2]

We doubt that the ACSA, which deals exclusively with child support issues in Alabama, is similarly situated to the NCFC, which is, by name, a national organization. Moreover, the 2003 Settlement shows that Blackston was placed on the Committee as NCFC representative and that Barber was designated as Blackston's alternate. And Plaintiffs have not alleged that they sought and were denied ex officio status as Committee members. Plaintiffs have not alleged how the designation of the ACSA president as an ex officio member--when Blackston also has been placed on the Committee--has resulted in the NCFC being treated disparately from a similarly-situated organization.[3]

---

[2]The district court denied Plaintiffs' equal protection claims on the ground that Plaintiffs failed to show that the allegedly differential treatment was based on a constitutionally protected interest like race, religion, national origin, etc. As we deny Plaintiffs' equal protection claims on other grounds, we express no opinion on whether the district court was correct in this determination. See Parks v. City of Warner Robins, 43 F.3d 609, 613 (11th Cir. 1995) (Court of Appeals may affirm district court's decision on any adequate basis).

[3]In their complaint, Plaintiffs raised other equal protection claims: that the State (1) failed to assemble a proper quorum of qualified persons for the 2004 Committee meetings, and (2) failed to convene the Committee within the time frame required by the 2003 Settlement. Plaintiffs include no substantive argument on these claims in their initial brief: we consider these claims abandoned. See Irwin v. Hawk, 40 F.3d 347 & n.1 (11th Cir. 1994) (noting that pro se litigant abandons issue by failing to challenge it on appeal). And regardless, we would reject these claims. The composition

We also affirm the district court's dismissal of Plaintiffs' due process claims.[4] Plaintiffs seem to have alleged a procedural due process claim based on the 2003 Settlement investing them with a property interest in the terms of the agreement, including Blackston's appointment to the Committee and the procedures by which the Committee would hold meetings and reach decisions. But the 2003 Settlement, which provided that it was a contract that could be enforced through a breach of contract suit, did not give rise to a constitutionally protected property interest. See Key West Harbour Dev. Corp. v. City of Key West, Fla., 987 F.2d 723, 727 (11th Cir. 1993) (stating that existence of enforceable contract with state or local government entity does not give rise to constitutionally protected property interest). Morever, to the extent Plaintiffs attempted to allege a substantive due process claim based on violations of the 2003 Settlement, they failed. See McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc) (areas where substantive rights are created by state law, like

---

of the Committee and the timing of the meetings would affect all Committee members equally. Plaintiffs, thus, have not alleged they were treated differently from a similarly situated person.

[4] Plaintiffs argue that the district court erred in granting legislative immunity to the State on their due process claims. But the district court, in denying the due process claims, wrote first that Plaintiffs' due process claims were attempts to frame--as a constitutional violation--their argument that the State violated the terms of the settlement agreements. Plaintiffs do not argue the merits of the underlying due process issue. We conclude that Plaintiffs failed to state a due process claim; so we express no opinion on whether the State was entitled to legislative immunity.

tort law and employment law, are not subject to substantive due process protection). Plaintiffs alleged neither a substantive nor a procedural due process claim.

Plaintiffs also argue that the district court violated their rights of due process and of access to the courts when it denied their request to file documents through the court's Case Management/Electronic Case Files (CM/ECF) system. This claim has no merit. The district court did not restrict Plaintiffs' ability to file documents: our review of the volume of documents that Plaintiffs have filed shows that Plaintiffs' access to the court has been adequate and meaningful throughout these proceedings.

In sum, the district court did not err in dismissing Plaintiffs' pro se civil rights action.[5]

**AFFIRMED.**

---

[5]In their initial brief, Plaintiffs list as issues whether the district court erred (1) in dismissing their petition for injunctive relief and (2) in determining that the State was entitled to Eleventh Amendment immunity. But on the immunity issue, Plaintiffs offer only a block quote from a case with no supporting argument; and they do not mention the injunctive relief issue further. Even liberally construing their pro se brief, we conclude that these issues are abandoned. See Irwin, 40 F.3d at 347 n.1; Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (deeming issue waived where party fails to include substantive argument and only makes passing reference to the order appealed from).